**John H. TAYLOR, Administrator of the Estate of Wilton Ison, also known as William Isom, Deceased**

v.

**READING COMPANY, Inc.**

Civ. A. No. 19719.

United States District Court
E. D. Pennsylvania.
Dec. 18, 1958.

A. Leon Higginbotham, Jr., Philadelphia, Pa., for plaintiff.

Richard P. Brown, Jr., Philadelphia, Pa., for defendant.

LORD, District Judge.

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, 28 U.S.C.A., plaintiff administrator in this diversity action seeks leave to amend his Complaint after expiration of the Pennsylvania Statutes of Limitations. Defendant resists, alleging that a new claim would thereby be introduced to its prejudice.

This cause was commenced on October 20, 1955, by plaintiff administrator (hereinafter designated plaintiff), a New

Jersey resident, against defendant railroad, a Pennsylvania corporation. Damages are sought resulting from fatal injuries to the decedent, Wilton Ison, on October 21, 1954. Recovery is predicated upon the Pennsylvania Wrongful Death Statute, 12 P.S. § 1602 et seq., and the Pennsylvania Survival Statute, 20 P.S. § 320.601 et seq. The statutes of limitations under these Acts are one and two years respectively. See Stegner v. Fenton, 1945, 351 Pa. 292, 40 A.2d 473.

Wilton Ison, the decedent, was, at the time of his death, a self-employed "junkman". During the early evening hours of October 21, 1954, he was killed as a result of being struck by defendant's train. The latter was making a routine movement which was to traverse a distance of some seven-and-one-half miles. While passing through a city "dump" some six miles en route, the train struck the decedent. It was not until the train arrived at its destination that the crew became aware of the tragedy.

Seeking a recovery founded upon negligence, paragraph six of the complaint to which the proposed amendment is directed avers (in pertinent part):

"6. * * * when said train arrived at or about 70th Street and Powers Lane in the City * * * of Philadelphia, * * * said train was operated so negligently and carelessly and without due regard to the safety and position of Wilton Ison, * * * that it struck the said Wilton Ison * * with great force and violence."

This paragraph is sought to be amended by the following (in pertinent part):

"6. * * * The cause of the accident was one or a combination of the following:

"(a) The tracks at the scene of the accident, the track bed and the land immediately adjacent thereto, was owned, controlled and managed by the Reading Company, and as a result of the negligent and careless operation by the defendant, through its agent, and the operation, maintenance and control of said railroad crossing, ties and tracks, the crossing had been permitted to deteriorate with the formation of holes, debris and other similar defects, as a result of which the deceased was caused to stagger, fall, trip, or have his foot imbedded in a hole immediately adjacent to the rail where the accident occurred. These defects as to the tracks, the bedding and crossing previously referred to are defects which defendant had knowledge of, or should have had knowledge of, if it had used reasonable care to inspect and maintain same, and it was defendant's duty to the public to correct said defects.

"(b) The train which contacted the deceased was operated by defendant's agent in a negligent and careless manner, without giving the necessary warnings or making the necessary observations or without making the necessary operations of said train to see or warn the deceased, or to operate the train safely to stop it, thereby avoiding the accident."

The proposed amendment divides itself into sections (a) and (b). Viewing the latter first it is clear that it merely describes in more specific detail the alleged acts of negligence associated with the operation of the train. It supplies greater fullness of detail to the negligence alleged in the Complaint. Under familiar principles this type of amendment is freely granted. See Green v. Walsh, D.C.E.D.Wis.1957, 21 F.R.D. 15, 19 and cases cited therein. While for reasons hereafter expressed this Court does not believe that the Pennsylvania cases are controlling, it is to be noted that they are in accord. See McCullough v. Philadelphia Rapid Transit Co., 1915, 61 Pa.Super. 384; Frazier v. Pittsburgh, 1940, 142 Pa.Super. 88, 15 A.2d 499.

It is not that part of the proposed amendment which calls forth the strenuous opposition of the defendant railroad, nor makes for difficulty in the present decision, however. It is the proposed section (a) of the amendment, which in essence avers negligence as to *maintenance* of the track and track bed, which is in severe dispute.

Defendant insists that this part of the amendment seeks to introduce an entirely new cause of action; and that it represents a new claim, unrelated to the original averment of negligent *operation*. Since the statutes of limitations have run, defendant insists, the amendment is not allowable under the Pennsylvania cases. Cox v. Wilkes-Barre Ry. Co., 1939, 334 Pa. 568, 6 A.2d 538; see Martin v. Pittsburgh Rys. Co., 1910, 227 Pa. 18, 75 A. 837, 26 L.R.A.,N.S., 1221; Grumbling v. Motter, 1950, 77 Pa.Dist. & Co.R. 382, 384; Brehm v. Johnstown Sanitary Dairy Co., 1955, 7 Pa.Dist. & Co.R.2d 315, 317.

Plaintiff argues that his proposed amendment is well within the contemplation of Rule 15, Fed.R.Civ.P.; does not seek to raise a new cause of action; and that—for reasons disclosed by the record —it would result in no unfair disadvantage or prejudice to the defendant.

■ Were this Court able to appraise the proposition as singlemindedly as do the respective parties, the decision— whichever way it went—would be quick, and the opinion pleasantly brief. To the contrary, however, the matter is seen as one which is not only addressed to the Court's discretion, but also as one which goes beyond the black letter of some of the authorities upon which the parties principally rely. Only after a thorough review of the circumstances revealed by the present record, as well as the applicable authorities, has the Court been persuaded that the reasons for granting the amendment preponderate over those advanced against it.

## I.

■ Jurisdiction in this cause rests solely upon diversity of citizenship, together—of course—with the requisite controverted amount. As a diversity case, it is controlled by the *substantive* law, the *lex loci,* of Pennsylvania. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Brown v. Moore, 3 Cir., 1957, 247 F.2d 711. Specifically, the applicable periods of limitation under the Pennsylvania Wrongful Death and the Pennsylvania Survival Acts are to be given full effect. Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

■ However, *all matters of procedure* are governed by the law of the forum. Restatement, Conflict of Laws § 585 (1934). See Tozer v. Charles A. Krause Milling Co., 3 Cir., 1951, 189 F.2d 242.

For determination here is the characterization to be given to the rules relating to amendment of pleadings after expiration of the statute of limitations. While there may be instances when a proposed amendment may be so inextricably interwoven with the State-created right sought to be enforced as to require application of State law, this Court does not believe that such is the situation here.

■ Traditionally, amendment of pleadings has been considered as a matter of procedure. See Restatement, Conflict of Laws § 592 (1934); Goodrich, Conflict of Laws §§ 15, 82 (3d Ed. 1949); 1 Barron & Holtzoff, Federal Practice and Procedure § 444 (Rules ed. 1950).

The Federal Rules of Civil Procedure and Federal law govern the matter of amendment to pleadings. Gifford v. Wichita Falls & Southern Railway Co., 5 Cir., 1955, 224 F.2d 374, 376; Carroll v. Sterling Hotel Co., D.C.M.D.Pa.1954, 16 F.R.D. 99; Grandey v. Pacific Indemnity Co., 5 Cir., 1954, 217 F.2d 27. See also, collecting a variety of contrasting

cases: Smith v. Piper Aircraft Corp., D.C.M.D.Pa.1955, 18 F.R.D. 169; Aarhus Oliefabrik A/S v. A. O. Smith Corp., D.C.E.D.Wis.1958, 22 F.R.D. 33.

■ This Court is, however, mindful of the rationale upon which diversity jurisdiction is based. A federal court in a diversity case—enforcing a state-created right—sits as "another court of the State". Yet that limitation upon the federal court is in its own turn qualified by the rule that therein the "forms and mode" by which the state right is enforced may necessarily vary. Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 108, 65 S.Ct. 1464, 89 L.Ed. 2079.

■ No formula can determine for the purpose of all cases the line between *substance* and the *procedural* "forms and mode" by which the federal court enforces the state law in diversity cases. A test proposed by Judge Goodrich, however, seems to this Court to suggest the solution to the instant problem, i. e. Goodrich, Conflict of Laws, § 15 at 43 (3d Ed. 1949):

> " * * * In view of the admitted federal power over procedure in the federal courts, it is submitted that when the Congress has exercised that power it has in a sense 'occupied' the field and the test should be whether the rule has any relation as to how a federal court shall conduct its business. If it does, the rule should be upheld. * * * "

Here, the applicable Federal Rules concern amendment of pleadings, in the first instance, and beyond that, the entire system of federal pleading as stated in the Federal Rules of Civil Procedure. That system is not the one by which the Pennsylvania courts conduct *their* business. It happens that there are a number of the states wherein the present procedural systems are in close conformity to those of the District Courts of the United States. There are others where the systems are at utter variance. Without

cataloguing examples, it suffices to say that the Pennsylvania practice and the federal system "are not identic"—to use the designation applied in distinguishing the system of another jurisdiction. Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 108, 65 S.Ct. 1464; see Levinson v. Deupree, 1953, 345 U.S. 648, 652, 73 S.Ct. 914, 97 L.Ed. 1319.

More fundamentally, however, the present problem is simply whether the proposed amendment will unfairly affect the development of this cause for trial. That determination can only be made in the light of the pleadings previously filed. A state court, no less than a federal one, would have to review the pleadings. Here—considering that the previous pleadings were drafted, and the case developed by pre trial procedure, entirely in accordance with the Federal Rules of Civil Procedure—it seems unrealistic if not utterly unreasonable to suddenly shift for *decision* to an entirely different set of rules governing procedure.

## II.

Rule 15(a) instructs this Court to grant leave to amend "freely" when "justice so requires". By operation of Rule 15(c), if the amendment "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

While leave to amend after the filing of a responsive pleading is within the discretion of the Court, the cases have to some extent crystallized the operative standards to be employed. See Green v. Walsh, D.C.E.D.Wis.1957, 21 F.R.D. 15. The following analysis is made in the light of those tests.

■ No citation is required for the holding that the Rule is to be construed liberally. Likewise the best approach is that which takes an over-all view of the problem.

■ Implicit in any determination relating to allowance of an amendment is

a measuring of the accompanying prejudice which might result to the opposing party. In this instance the defendant maintains that the time has long since expired when a careful investigation as to the maintenance of the track and track bed would be feasible. The record, however, does not support that assertion.

■ It is apparent therefrom that the exact location of the accident is in issue. Defendant, from inferences based on blood stains and pieces of flesh, places the scene at about 620 feet west of a public crossing. The body itself was found some thirty feet farther west. Plaintiff places the accident at the crossing or somewhat east of it. This deduction is based on allegations that a heel from one of the decedent's shoes was found jammed against the rail at the public crossing, as well as bone particles and the deceased's sock found at that location.

In support of his Motion to Amend, plaintiff asserts that defendant is fully apprised and prepared to defend the specific allegations of negligence encompassed by the amended pleading. His brief avers:

"* * * Previous depositions and testimony at a prior trial, indicate that the following morning [after the accident] various Reading employees experienced in claims and investigations and adjustment, were on the scene, accompanied by a civil engineer, photographer, and Reading police. Photographs were taken of the exact location where the accident in issue was alleged to have occurred."

In response to plaintiff's Interrogatories inquiring as to relevant photographs, drawings, etc., defendant acknowledged that it had "photographs of the track in question and the surrounding area". The notes of testimony taken at the former trial of this cause (continued upon a plea of surprise) indicate that defendant took photographs of the public crossing and sites extending to a distance of some 700 or 800 feet west of the crossing.

Numerous indices of the tragedy were scattered along the tracks for a considerable distance. It is difficult to imagine that defendant railroad would not at the time of its investigation have considered the state of its track and track bed as possible instruments of causation.

Similarly this Court is of the opinion that the allegations of the proposed amendment arose out of the "conduct, transaction, or occurrence" set forth in the original complaint. Whereas the particular modes by which the defendant was allegedly negligent have been altered, the operative facts upon which plaintiff administrator sought recovery under the original pleading have not been changed. Plaintiff has apprised the defendant of his claim. The amended complaint relates to the death as having occurred at the same time and at the same place as in the original declaration.

"* * * The cause of action now, as it was in the beginning, is the same—it is a suit to recover damages for the alleged wrongful death of the deceased. 'The effect of the amendment here [is] to facilitate a fair trial of the existing issues between plaintiff and defendant.' Maty v. Grasselli Chemical Co., 303 U.S. 197, 201, 58 S.Ct. 507, 82 L.Ed. 745. There is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that [plaintiff] was trying to enforce a claim against it because of the events leading up to the death of the deceased in the [defendant's] yard." Tiller v. Atlantic Coast Line, 1945, 323 U.S. 574, 581, 65 S.Ct. 421, 424, 89 L.Ed. 465.

For the foregoing reasons, it is hereby ordered that plaintiff's Motion for Leave to Amend his Complaint be and the same is granted.